# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Charles Adams, | No. CV-20-01247-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Richard Charles Adams's appeal from the Commissioner's denial of his application for Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. §§ 401–434, 1381–1383f. (Doc. 1). The appeal is fully briefed. (Docs. 16, 19, 20). The Court now rules.

**I.  BACKGROUND**

Plaintiff was born on February 5, 1969 and completed high school. (Docs. 13-3 at 40; 13-7 at 7). Plaintiff has past relevant work experience as a "collections clerk." (Doc. 16 at 2). Plaintiff argued that the following conditions rendered him disabled: "morbid obesity, status-post tibia fracture, asthma, bilateral knee arthritis, and lumbar degenerative disc disease with stenosis." (Doc. 16 at 3). Plaintiff has not engaged in substantial gainful activity since July 1, 2015, the alleged onset date of Plaintiff's conditions. (Doc. 13-3 at 19).

Plaintiff filed an application for SSDI and SSI benefits in February 2017. (Docs. 16 at 2; 13-3 at 15). Those applications were denied at the initial stage, (Doc. 13-3 at 15), upon

reconsideration, (*id.*), and by the Administrative Law Judge ("ALJ") after a hearing, (Docs. 16 at 2; 13-3 at 15–27). The Appeals Council denied review. (Doc. 13-3 at 2–4). Plaintiff then sought review in this Court. (Doc. 1).

### A. The Disability Determination

A claimant must show he "is under a disability" to qualify for disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). The claimant is disabled if he suffers from a medically determinable physical or mental impairment that prevents him from engaging in any "substantial gainful activity." *Id.* § 423(d)(1)–(2). The Social Security Administration has created a five-step process for an ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1420(a)(1). Each step can be dispositive. *See id.* § 404.1420(a)(4). "The burden of proof is on the claimant at steps one through four," and the burden shifts to the Commissioner at step five. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ examines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ proceeds to step two. At step two, the ALJ considers whether the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If the ALJ finds that there is severe impairment, then the ALJ proceeds to step three to determine whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC is the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do "past relevant work" in light of the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the final step and examines whether the claimant "can make an adjustment to other work" considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If an adjustment can be made, the claimant is not disabled. *Id.*

**B. The ALJ's Decision**

The ALJ denied Plaintiff social security benefits because she determined that Plaintiff was "not disabled" and was "capable of performing past relevant work as a collections clerk." (Doc. 13-3 at 26–27). After finding that Plaintiff was not engaged in substantial gainful activity since July 22, 2015 at step one, the ALJ determined, at step two, that Plaintiff "has the following severe impairments: morbid obesity, status-post tibia fracture, asthma, bilateral knee arthritis, and lumbar degenerative disc disease with stenosis." (*Id.* at 19–20).

At step three, the ALJ concluded that Plaintiff's impairments, singularly or in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 20–21). Accordingly, the ALJ conducted an RFC analysis and found that Plaintiff could perform "a limited range of light work." (*Id.* at 21–26). In doing so, the ALJ gave "little weight" to the opinions of Plaintiff's treating physician, "some weight" to the opinions of Plaintiff's examining physicians, and "significant weight" to the opinions of state agency nonexamining physicians. (*Id.* at 24–26).

At step four, the ALJ determined that Plaintiff could perform past relevant work as a collections clerk (DOT 216.362-014)." (*Id.* at 26). Thus, the ALJ determined that Plaintiff had not been under a disability from July 1, 2015 through the date of the ALJ's decision. (*Id.* at 27).

**II. LEGAL STANDARD**

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young*

*v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

**III.   ANALYSIS**

Plaintiff contends that there are two potential errors in the ALJ's analysis: (1) The ALJ erred when she failed to provide specific and legitimate reasons for assigning little weight to the opinions of Dr. Narwani, Plaintiff's treating physician, and significant weight to the opinions of nonexamining physicians, and (2) the ALJ did not provide specific, clear,

and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. 16). The Court addresses each contention in turn.

### A. Physician Opinions

Plaintiff argues that the ALJ erred when she failed to provide specific and legitimate reasons for assigning little weight to the opinions of Dr. Narwani, Plaintiff's treating physician. (Doc. 16 at 12). Plaintiff also argues that this error was magnified by the fact that the ALJ assigned significant weight to the opinions of Plaintiff's nonexamining physicians. (*See id.* at 17–19).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ must also apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6). "The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13.

### 1. Dr. Narwani

The ALJ stated that she gave little weight to Dr. Narwani's assessments because the medical evidence of record did not support the limitations opined on by Dr. Narwani and "the record indicates that [Plaintiff] had significant improvement with treatment." (Doc. 13-3 at 25). The ALJ additionally found that "the medical evidence of record indicate[d] full motor strength and tone." (*Id.*).

The ALJ justified assigning less weight to Dr. Narwani's opinions by noting that they were not supported by the medical evidence of record. (*Id.*). Dr. Narwani opined that

Plaintiff could:

> lift and/or carry less than 10 pounds; stand and/or walk for less than 2 hours in an 8-hour workday; sit for less than 2 hours in an 8-hour workday; needed to alternate between sitting, standing, or walking every 46 to 60 minutes, with a 10 to 15 minute rest period between position changes; could less than occasionally use his right hand, use his left hand, bend, reach, and stoop. He further opined that [Plaintiff] had cognitive or pace limitations that would inhibit the completion of more than 1 and 2 step job duties over an 8 hours [sic] workday and would cause a severe interruption of work pace with [Plaintiff] being off task; would experience headaches or mental fatigue more than 4 times per month, such that [Plaintiff] would need to rest 1 to 2 hours at a time on the days present; and would miss more than 6 days of work per month due to his medical condition.

(*Id.*). The ALJ noted, however, that the medical record indicates that Plaintiff had full motor strength and tone. (*Id.* (citing Docs. 13-9 at 2–3, 14–15, 43; 13-10 at 84)). Further, the ALJ found that the record indicated that Plaintiff "had significant improvement with treatment, and even was able to reduce his pain medication." (Doc. 13-3 at 25 (citing Docs. 13-9 at 20, 43, 65; 13-10 at 47, 52)). The ALJ also found that there was "no evidence to support the extreme manipulative limitations" assessed by Dr. Narwani. (Doc. 13-3 at 25).

Further, in examining Plaintiff's medical record, the ALJ cited records indicating that Plaintiff consistently had "normal objective clinical examinations, including no acute distress, full range of motion, normal strength, normal sensation, and no clubbing, cyanosis, or edema," (Docs. 13-3 at 22; 13-8 at 106, 109, 113–114, 116; 13-9 at 80, 83, 86, 89, 91, 93; 13-10 at 77), full motor strength and tone in all extremities, (Docs. 13-3 at 22; 13-9 at 3, 7, 11, 15, 19, 24, 31, 34, 37, 40, 43, 58, 65, 70, 75; 13-10 at 3–49, 55–72, 84, 89, 93), "good control of his pain, without side effects, from narcotic medication, trigger point injections, transformational epidural steroid injections, medical branch blocks, and radiofrequency ablation," (Docs. 13-3 at 22; 13-9 at 2–44, 57–79; 13-10 at 2–76), normal respiratory examinations, (Docs. 13-3 at 23; 13-8 at 106, 109, 113; 13-9 at 80, 83–93; 13-10 at 77), and an ability to start "mild aerobic rehabilitative exercises," (Docs. 13-3 at 25; 13-9 at 20; 13-10 at 35, 57, 85).

The ALJ also noted that, regarding Plaintiff's reported pain, Plaintiff started tapering his pain medication because his overall pain level had reduced, (Docs. 13-3 at 22–23; 13-10 at 4, 9, 14), reported "over 65% relief from epidural steroid injections, 80% relief from trigger point injections, greater than 80% relief from medical branch blocks, and significant relief from radiofrequency ablation," (Docs. 13-3 at 23; 13-9 at 65, 76; 13-10 at 47, 52, 57), reported improved pain levels due to core strengthening exercises, (Docs. 13-3 at 23; 13-10 at 9), reported 60%–80% pain relief in his lower limb due to a trial of spinal cord stimulator which Plaintiff believed could allow him to come off of his pain medications if replicated, (Docs. 13-3 at 23; 13-10 at 94), and received steroid injections in his knees which provided significant relief, (Docs. 13-3 at 23; 13-10 at 17, 21, 26, 71).

The ALJ's decision additionally demonstrates that she considered the relevant factors set forth in 20 C.F.R. 404.1527(c) when weighing Dr. Narwani's opinions. The ALJ discussed the nature of the treatment relationship, noting that Dr. Narwani's was Plaintiff's pain management specialist. (Doc. 13-3 at 25); *see* 20 C.F.R. 404.1527(c)(2). The ALJ also considered the supportability and consistency of Dr. Narwani's opinions with the record as a whole. (Doc. 13-3 at 25); *see* 20 C.F.R. 404.1527(c)(3)–(4). Additionally, the ALJ noted that Dr. Narwani's specialty is pain management. (Doc. 13-3 at 25); *see* 20 C.F.R. 404.1527(c)(5). These considerations affirm the ALJ's assertion that she considered the relevant factors set forth in 20 C.F.R. 404.1527(c). (*See* Doc. 13-3 at 21).

Plaintiff asserts that the medical evidence cited by the ALJ supports, rather than detracts from, Dr. Narwani's opinions. (*Id.* at 13–17). Yet, it is not for this Court to second guess the ALJ's reasonable interpretation of the medical record because "where evidence is susceptible to more than one rational interpretation, as it is here, it is the ALJ's conclusion that must be upheld." *Benear v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04160-PHX-JAT, 2019 WL 258345, at *6 (D. Ariz. Jan. 18, 2019), *aff'd sub nom. Benear v. Saul*, 838 F. App'x 305 (9th Cir. 2021) (internal alterations and marks omitted).

Plaintiff next argues that the ALJ was not qualified to determine that the objective medical record failed to support Dr. Narwani's opinions. (Doc. 16 at 13–15). Instead,

Plaintiff argues, the interpretation of medical evidence is the role of doctors. (*Id.*). However, when examining the medical record, "[r]esolving conflicts is the ALJ's responsibility and prerogative." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). Rather than usurp the role of a doctor, the ALJ used evidence in the record to resolve the conflicts between the opinions of doctors. Thus, even as a lay person, the ALJ properly weighed the evidence before her and provided specific and legitimate reasons for her determinations. *See Garrison*, 759 F.3d at 1012.

Plaintiff then avers that the ALJ did not properly examine the whole record but inappropriately engaged in "cherry-picking" to support her findings. (Doc. 16 at 15–16). Yet, the ALJ here examined the medical record as a whole, including portions of the record that supported her findings and portions that did not. (*See, e.g.*, Doc. 13-3 at 22 (citing portions of the record showing Plaintiff's full range of motion, normal strength, and normal sensation followed by portions of the record showing Plaintiff's tenderness to palpitation, limited range of motion, and palpable muscles spasms)). The Court finds that the medical record as a whole is at least ambiguous as to Plaintiff's symptoms. "[G]iven that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court finds that the ALJ did not engage in cherry-picking and defers to the ALJ's findings in this case. *Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Further, Plaintiff asserts that, while the medical record shows stability in his symptoms, stability does not mean he was symptom free. (Doc. 16 at 15–16). Yet, Plaintiff admits that the record reflects improvement and stability in his pain from medication and pain management procedures. (*See id.* at 15). While Plaintiff is correct that some improvements and stability in medical conditions do not mean that a party is symptom free, *see Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008), the improvements in Plaintiff's symptoms support the ALJ's ultimate decision to give little weight to the opinions of Dr. Narwani. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

Finally, Plaintiff argues that "the ALJ rejected Dr. Narwani's assessment based on the ALJ's belief the evidence did not support Dr. Narwani's assessed manipulative limitations." (Doc. 16 at 17). The ALJ, however, did not "reject" Dr. Narwani's opinions based on the assessed manipulative limitations, but merely found that the lack of evidence to support Dr. Narwani's "extreme manipulative limitations" supported the ALJ's decision to give little weight to Dr. Narwani's opinion. (*See* Doc. 13-3 at 25). Plaintiff cites, and the Court finds, no evidence to support Dr. Narwani's opined manipulative limitations. Thus, while an ALJ errs by discounting a medical source's entire testimony because of a single inconsistency with a record, *see Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016), the ALJ here did not err by simply supporting her decision to give Dr. Narwani's opinion little weight by noting the absence of certain evidence.

Ultimately, the ALJ did not err in giving minimal weight to Plaintiff's treating physician after analyzing the entire medical record and determining that it did not support Dr. Narwani's opinions. *See Batson*, 359 F.3d at 1195 (holding an ALJ did not err in giving minimal weight to the opinions of plaintiff's treating physicians, in part, because they were not supported by the medical record as a whole); *Benear* 2019 WL 258345, at *12 (same); *Hermiz v. Berryhill*, No. 318CV01035BENKSC, 2019 WL 3780271, at *18 (S.D. Cal. Aug. 9, 2019), *report and recommendation adopted*, No. 318CV01035BENKSC, 2019 WL 4016451 (S.D. Cal. Aug. 26, 2019) (same).

### 2. Nonexamining Physicians

The ALJ gave substantial weight to the opinions of nonexamining physicians who found that Plaintiff could perform activities beyond those opined by Dr. Narwani. (Doc. 13-3 at 24). The ALJ gave substantial weight to these opinions because she found they were "consistent with the medical evidence of record." (*Id.*). Plaintiff argues that the ALJ erred when she gave substantial weight to these opinions while giving little weight to the opinions of Dr. Narwani. (Doc. 16 at 17–19).

In determining whether a party is disabled, ALJs are required to consider the record medical opinions together with the other relevant evidence. 20 C.F.R. § 404.1527(b)–(c). When deciding how much weight to give a medical opinion, the ALJ considers numerous factors, including the supportability of that medical opinion. 20 C.F.R. § 404.1527(c)(3). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

"'[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.'" *Fliss v. Astrue*, 284 F. App'x 440, 442 (9th Cir. 2008) (quoting *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)). The rejection of the opinion of an examining or treating physician may be based in part on the testimony of a nontreating, nonexamining medical advisor, when consistent with other independent evidence in the record. *Shafer v. Barnhart*, 120 F. App'x 688, 694 (9th Cir. 2005) (citing *Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Here, the ALJ set out a detailed and thorough summary of the facts and clinical evidence that she believed supported the opinions of the nonexamining physicians and conflicted with the opinions of Dr. Narwani. (Doc. 13-3 at 22–26). She did not find that the opinions of the nonexamining physicians alone amounted to substantial evidence, but that they were due substantial weight in light of the supporting record evidence. (*See id.* at 24–25). While the ALJ's decision to give little weight to Dr. Narwani's opinion may have been based in part on the opinions of nonexamining physicians, this rejection was supported by substantial evidence in the medical record. *See supra* Section III.A.1.

Plaintiff argues that the ALJ found that the nonexamining physicians' opinions "cancelled out" Dr. Narwani's opinions. (Doc. 16 at 18). This, however, is a mischaracterization of the ALJ's findings. The ALJ did not use the nonexamining physicians' opinions to cancel out Dr. Narwani's opinions, but instead gave Dr. Narwani's

opinions little weight finding them to be unsupported by the record, including the objective medical evidence. (*See* Doc. 13-3 at 24–25).

Plaintiff further asserts that the ALJ did not adequately explain why the opinions of nonexamining physicians, some of whom did not examine the full record, were elevated above the opinions of a treating physician. (Doc. 16 at 18–19). To begin, ALJ's are required to consider all the available medical evidence when determining if a party is disabled, including the opinions of nonexamining physicians. *See* 20 C.F.R. § 404.1527(b)–(c). While an ALJ should take into account whether a physician has reviewed a full or partial medical record when weighing medical opinions, the opinions of a physician who has only reviewed a partial record may still be considered by an ALJ. *See* 20 C.F.R. § 404.1527(c)(6). Additionally, the ALJ explained that the opinions of the nonexamining physicians were given substantial weight because they comported with the objective medical evidence. (Doc. 13-3 at 24–25).

Accordingly, the ALJ did not err in giving substantial weight to the opinions of nonexamining physicians after finding that those opinions were supported by the objective medical record. *See Fliss*, 284 F. App'x at 442 (holding that the ALJ did not err in relying on the opinions of nonexamining physicians that contradicted treating physician opinions because the medical evidence supported the opinions of the nonexamining physicians); *Cameron v. Astrue*, No. CV 07-8167-PCT-NVW, 2008 WL 4850023, at *7–8 (D. Ariz. Nov. 7, 2008) (holding that the ALJ did not err in relying on the opinions of nonexamining physicians over the opinions of treating physicians); *Darrington v. Astrue*, No. CV11-0953-PHX-DGC, 2012 WL 79276, at *7 (D. Ariz. Jan. 11, 2012) (holding the ALJ did not err in giving great weight to opinions of a nonexamining physician because the opinions were supported by the medical record).

**B.     Symptom Testimony**

Plaintiff argues that the ALJ erred when evaluating his subjective symptom statements. (Doc. 16 at 19–24). The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 13-3 at 22).

### 1. Legal Standard

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a Plaintiff's subjective symptom testimony. "First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the Plaintiff presents such evidence, the ALJ then evaluates the Plaintiff's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### 2. Discussion

Plaintiff first argues that the ALJ applied an improper legal standard by requiring Plaintiff's symptoms to be "entirely consistent" with the objective medical evidence. (Doc. 16 at 20–22). Plaintiff further asserts that the ALJ improperly required Plaintiff to provide medical evidence of the severity of Plaintiff's symptoms. (*Id.*).

Although the Court agrees that Plaintiff is not required to provide medical evidence of the severity of his symptoms, *see Garrison*, 759 F.3d at 1014–15, objective medical evidence is a useful tool for an ALJ to assess Plaintiff's credibility regarding the intensity and persistence of his symptoms, *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding that objective medical evidence was appropriately used to assess credibility of plaintiff's symptom testimony); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (holding that medical evidence is "a relevant factor in determining the severity

of the claimant's pain and its disabling effects).  The Court does not read the ALJ's "not entirely consistent" statement, (Doc. 13-3 at 22), as requiring Plaintiff to fully corroborate his symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence. The ALJ found this conflicting evidence to be Plaintiff's improvement through pain treatment and the objective medical evidence. (*Id.* at 22–24).

### a. Pain Treatment

When evaluating Plaintiff's symptom testimony, the ALJ examined myriad evidence regarding Plaintiff's pain treatment and found "[t]his evidence indicates that [Plaintiff's] pain was not as severe as alleged" (*Id.* at 23). The ALJ also found that the "evidence shows that [Plaintiff's] pain improved with treatment." (*Id.*).

Plaintiff asserts that this argument is belied by Plaintiff's medical records which, in fact, support Plaintiff's symptom testimony. (Doc. 16 at 22–23). As discussed *supra*, however, the ALJ cited portions of the record that show a medical plan of treatment through pain medications and procedures that yielded improvement in Plaintiff's conditions. *See supra* Section III.A.1. At most the record is ambiguous as to Plaintiff's improvement through treatment, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's finding. *Singh*, 2020 WL 5757620, at *3 (quoting *Tommasetti*, 533 F.3d at 1041). Because the ALJ determined that Plaintiff's condition improved through treatment, including medications and pain management procedures, the Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony on this basis. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Singh.*, 2020 WL 5757620, at *2–3 (affirming ALJ's discounting of plaintiff's testimony, in part, because plaintiff's conditions improved with medication).

### b. Medical Evidence

The ALJ additionally found that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence." (Doc. 13-3 at 22). The ALJ went on to discuss the medical evidence she found inconsistent citing records indicating that Plaintiff had full motor strength and tone, saw significant improvement with treatment, was able to reduce his pain medication, and normal respiratory examinations. *See supra* Section III.A.1.

Plaintiff argues that the ALJ did not "tie-in the characterization of the medical record with any particular symptom testimony." (Doc. 16 at 22). The ALJ, however, specifically noted that the medical records did not support Plaintiff's testimony regarding his alleged limitations due to back pain, (Doc. 13-3 at 22), his alleged disabling pain generally, (*id.* at 22–23), his lower extremity impairments, (*id.* at 23), and his respiratory issues, (*id.*). Thus, the Court finds the ALJ sufficiently tied her characterization of the medical record to Plaintiff's symptom testimony. *See Lewis v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00765-PHX-MTL, 2021 WL 791467, at *4 (D. Ariz. Mar. 2, 2021) (finding that ALJ, by citing specific instances throughout a multi-year period, adequately tied countervailing medical record to plaintiff's symptom testimony when discounting that testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

### 3. Conclusion Regarding Symptom Testimony

Because the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony, including Plaintiff's improvement through treatment and the objective medical evidence, the Court will not overturn the denial of disability benefits on this ground. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing.").

### IV. CONCLUSION

Accordingly,

///

- 14 -

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly.

Dated this 28th day of June, 2021.

James A. Teilborg
Senior United States District Judge